(147 App. Div. 815.)

## BRASSIL v. MARYLAND CASUALTY CO.

(Supreme Court, Appellate Division, First Department.    December 29, 1911.)

1. INSURANCE (§ 514*)—EMPLOYER'S LIABILITY INSURANCE—CONDITION PRECEDENT TO LIABILITY.

    Under an employer's liability policy, which provides that the insurer shall not be liable to reimburse the insured except for "losses actually sustained and paid by him in satisfaction of a judgment after trial of the issues," it is a condition precedent to the recovery of indemnity that the insured shall have actually paid the loss.

    [Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1298; Dec. Dig. § 514.*]

2. INSURANCE (§ 513*)—CASUALTY INSURANCE—LIABILITY.

    Where an insurance company, having the option to defend, settles the claim at its own cost, or to pay the indemnity to insured, repudiates any liability whatever under the contract, and it is ultimately determined that the claim was one against which it had not undertaken to indemnify the insured, it will not be liable either for indemnity against the claim or for the expenses incurred by the insured in defending himself against it.

    [Ed. Note.—For other cases, see Insurance, Dec. Dig. § 513.*]

3. INSURANCE (§ 513*)—CASUALTY INSURANCE—OBLIGATION TO DEFEND—ACTION FOR BREACH.

    An indemnity policy insured an employer against "loss from common-law and statutory liability for damages on account of bodily injury," accidentally sustained by any employé from plaintiff's negligence, to the amount of $1,500, the insurer being liable only for "losses actually sustained and paid by him in satisfaction of a judgment after trial of the issues," and, having an option to defend any suit by an employé in the name and in behalf of the insured, to settle the same at its own cost, or to pay the insured the stipulated indemnity, the insured was forbidden to negotiate or settle a claim without consent of the insurer. The insurer declined to settle an employé's claim, and defended actions which resulted in judgments against insured for $6,500. The insurer then declined to appeal, whereupon the insured appealed and obtained a reversal, and the actions were subsequently dismissed for want of prosecution. Held, in an action by the insured for his expenses incurred, that the insurer, by defending, had assumed to defend "in behalf of" the insured to the full amount for which the insured might be found liable, the consideration therefor being based on the premium paid, the insurer's election to defend, and the renunciation by the insured of the right to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

defend himself, and that, on the insurer's breach of such obligation, it was liable for the expenses incurred by the insurer.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 513.*]

4. INSURANCE (§ 513*)—EMPLOYER'S LIABILITY-INSURANCE—RIGHT TO DEFEND —ELECTION.

Where an employer's liability insurance company, upon a loss covered by its policy, had a right to defend a suit against the insured in the name and on behalf of the insured, to settle the claim at its own cost, or to pay the insured the stipulated indemnity, and elected to defend a suit, it could not thereafter abandon such election after judgment against the insured in excess of the indemnity, and insist on paying the stipulated indemnity, since such rights were inconsistent, because the adoption of either necessarily implied rejection of the others.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 513.*]

Ingraham, P. J., and Laughlin, J., dissenting.

Appeal from Trial Term, New York County.

Action by Daniel S. Brassil against the Maryland Casualty Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Argued before INGRAHAM, P. J., and LAUGHLIN, MILLER, SCOTT, and DOWLING, JJ.

James J. Mahoney, for appellant.
Thomas F. Magner, for respondent.

SCOTT, J. The plaintiff has recovered a judgment for the reasonable expenses incurred by him in prosecuting, to a successful issue, two actions brought against him, the defense of which the defendant undertook and assumed up to a certain point, and then abandoned and refused to proceed further with. The defendant appeals. The facts are not in dispute.

The plaintiff, a manufacturer, held an accident indemnity policy, issued by the defendant, by which it undertook to indemnify him for a term of three years "against loss from common-law and statutory liability" for damages for bodily injuries accidentally suffered by any employé or employés of the insured, while engaged in the prosecution of his business. During the lifetime of the policy, one of the plaintiff's employés named Loughlin, a minor, was accidentally injured, and shortly afterwards he and his father began actions for damages by reason of such injury. The plaintiff duly notified defendant, as his policy required, of the happening of the accident and of the commencement of the actions, and defendant thereupon exercised the option given it by the terms of the policy, and elected to undertake the defense of the actions. To this end its attorney appeared in said actions for the plaintiff, prepared the answers, and carried on the defense. It does not appear that plaintiff was offered, or that he assumed, any control over or direction of the defense, except that, about two weeks before the actions came on for trial, defendant's attorney wrote a letter to plaintiff suggesting that verdicts might be recovered to an amount aggregating more than the total liability of defendant under its policy, and that, for that reason, it might be advisable for plaintiff to retain private counsel to protect

his excess of liability, and offering to co-operate with such counsel in the defense of the actions. The plaintiff, accordingly, did retain private counsel, who appeared at the trial. How much part he took therein does not appear. Prior to the trial, the plaintiff received from the plaintiffs in the damage suits offers to settle the suits and satisfy the claims for the sum of $1,500. These offers he communicated to the present defendant, which, however, refused to consider them or to settle the suits. The actions proceeded to trial and resulted in verdicts against plaintiff aggregating $6,500. The defendant thereupon notified plaintiff that it would not prosecute an appeal, "but holds itself ready to comply with the terms of its contract with you in case you should satisfy the judgment rendered against you."

Just what the defendant meant by its offer to "comply with the terms of its contract" is not explained; but we assume that it meant to say that it would pay plaintiff the sum of $1,500, when he should have satisfied the judgments for $6,500 and costs. The plaintiff was then placed in an unfortunate position. He had been mulcted in damages in upwards of $6,500 as the result of actions at law, the defense of which had been virtually taken out of his hands; the defendant, which had thus far assumed his defense, refused to proceed further, and offered to pay him only the face of the policy, more than $5,000 less than his total liability, and that only after he had paid and satisfied the judgments. He vainly protested to defendant that, having gone so far, it was under a duty to prosecute appeals, but met only a refusal. There was nothing left for him to do except to procure the substitution of his own attorney, and to prosecute appeals on his own behalf. This he did, with such success that both judgments were reversed by the Court of Appeals and new trials ordered. These, however, were never had, because the suits were ultimately dismissed for failure to prosecute. For the expense incurred in prosecuting these appeals the plaintiff now sues and has recovered judgment. The defendant, treating this action as one to recover the indemnity contracted for by the policy, insists that it can be subjected to no liability for two reasons: First, because its only agreement was to insure plaintiff against loss arising from common-law or statutory liability for damages, and the final outcome of the actions against plaintiff demonstrates that he was never liable to such loss; and, secondly, because by the terms of the policy defendant's obligation to pay was to arise only after the insured had been actually subjected to loss by being obliged to pay damages, which, in consequence of the reversal of the judgment, he has not been obliged to do.

If the action must rest upon the theory upon which the defendant supposes it to rest, its objections to the judgment are unanswerable. The contract of indemnity is only against loss from common-law or statutory liability, and, if there be no such liability, there can be no indemnity. Cornell v. Travelers' Ins. Co., 175 N. Y. 239, 67 N. E. 578.

[1] The policy provides that the defendant shall not be liable to reimburse the insured except for "losses actually sustained *and paid*

by him in satisfaction of a judgment after trial of the issues." This clause undoubtedly creates a condition precedent to the recovery of indemnity that the insured shall have actually paid the loss. White v. Maryland Casualty Co., 139 App. Div. 179, 123 N. Y. Supp. 840. The respondent does not combat either of these propositions, but insists that he is not suing for indemnity against the claims for damages on behalf of the Loughlins, father and son, but for damages for the breach of the obligation assumed by defendant after it had been notified of the claim made by the plaintiffs in the damage suits, and had elected to undertake the defense thereof. In our opinion the judgment may be sustained upon this theory. The policy embraced a number of conditions or stipulations defining the rights and obligations of the parties. The first required the assured, upon the occurrence of the accident, to give immediate notice to the defendant. There is no claim that this condition was not complied with. The second condition prescribes what shall be done by the company, as follows:

"(2) If thereafter any suit is brought against the assured to enforce a claim for damages on account of an accident covered by the policy immediate notice thereof shall be given to the company and the company will defend against such proceedings in the name and on behalf of the assured, or settle the same at its own cost unless it shall elect to pay the assured the indemnity provided for in clause A of special agreements as limited herein."

The third condition forbids the assured to settle any claim except at his own cost, or to interfere with any negotiations for settlement, or in any legal proceedings without the consent of the company previously given in writing.

[2] Of course, it is open to the company, with respect to any given claim, to refuse to do either of these things, and to repudiate any liability whatever under the contract. If it adopts that course, and it be ultimately determined that the claim was one against which it did not undertake to indemnify the assured, it will be liable neither for indemnity against the claim, nor for the expenses incurred by the assured in defending himself against it. Cornell v. Travelers' Ins. Co., supra.

If, however, the company undertakes to abide by and fulfill the contract with the assured, three courses of conduct are open to it, and it has the absolute and unqualified right to determine which it will adopt. It may: (a) Defend against such proceeding in the name and on behalf of the assured; or (b) settle the claim at its own cost; or (c) pay the assured the stipulated amount of indemnity, leaving him to defend himself against the claim as best he may.

[3] The appellant, in the case at bar, chose the first of these alternatives and elected to assume the defense of the actions brought to enforce the claims. In so doing it did not merely undertake to defend itself to the limit of its possible liability, but to defend the actions "in behalf of" the assured, and to secure to itself the absolute control and direction of such defense the assured was required to stipulate that he would not interfere with the actions, unless expressly permitted so to do by the company, and then only, of course,

to the extent that the company permitted interference. When the company had thus exercised its option, a new contract came into existence between the company and the assured. The company no longer stood in the position of an indemnitor as to a limited class of liabilities, but it had assumed a definite obligation to defend certain actual suits "in behalf of" the plaintiff, and this obligation was not limited by the amount the company had at stake, but also by the amount for which the assured might be found liable. The consideration for this contract is to be found in the premiums paid for the policy, the election by the company, and the renunciation by the assured of the right to defend himself.

[4] The three courses of action reserved to the company by the second condition above quoted were obviously inconsistent, because the adoption of either necessarily implied the rejection of the others. So, when the company undertook to defend the actions, it elected to pursue that particular course, and could not thereafter abandon such election and adopt the inconsistent course of paying the amount of the indemnity and abandoning the defense of the suits, and it certainly could not do this when the result of the election had been to cast the plaintiff in damages to the extent of $5,000 more than the agreed indemnity. It was then impossible to put the plaintiff back where he had been when the election was exercised. Mills v. Parkhurst, 126 N. Y. 89-92, 26 N. E. 1041, 13 L. R. A. 472; Whalen v. Stuart, 194 N. Y. 495, 505, 87 N. E. 819; Kilpatrick v. Germania Ins. Co., 183 N. Y. 163-168, 75 N. E. 1124, 2 L. R. A. (N. S.) 574, 111 Am. St. Rep. 722.

In point of fact, however, the defendant never did offer to adopt any of these courses specified in the second condition, except that of defending the action. The position it took after the rendition of the judgment was utterly unreasonable. It refused to carry on an appeal, thus virtually asserting that the claim was one covered by its policy and for which it was liable; but, at the same time, it refused to pay the amount for which it was concededly liable, unless the plaintiff should first pay the judgment against him, which virtually amounted to a prohibition against an appeal by him, except at the risk of forfeiting his indemnity. In adopting this attitude, the defendant clearly indicated that it had misconceived the obligation it had assumed to plaintiff, and considered that it owed no duty save to itself. It did not in our opinion fulfill its whole duty to plaintiff when the erroneous judgment was entered upon the trial. It had undertaken to defend the actions in plaintiff's behalf, and had thereby excluded him from the management and control of the defense. The result of its direction of the defense had been to charge the plaintiff with a large judgment, only partly covered by insurance. It owed him a duty which was not satisfied by leaving him in this predicament. It is true, perhaps, that it was not bound to assume the labor and expense of an appeal which it considered hopeless; but, if it refused to go on with the appeal on that ground, it ran the risk that its estimate of the merits of the appeal might prove to be erroneous, as it proved to be in this case. The defendant undoubtedly elected to

assume the defense of the actions because it deemed that it would gain some advantage by adopting that course; but it cannot take all the advantage, and repudiate all the obligations. Having elected and undertaken to defend in behalf of the assured, it cannot be permitted to drop the defense when it suits its own purposes, without regard to his interests, and leave him stranded with an erroneous judgment against him for a large amount, seeking later to take advantage of the outcome of the appeal which it refused to prosecute itself.

The appellant lays great stress upon Cornell v. Travelers' Ins. Co., supra; but, as already indicated, there is no real resemblance between this case and that. There the insurance company insisted from the beginning that the accidents sued upon were not covered by its policy, and refused to defend or pay. The result of the actions against the assured, in that case, showed that the insurance company had been right, and that no liability had ever attached to it. If the insurance company had elected to defend, a different question would have been presented. It is suggested that a party will not be held to an election made in ignorance of the facts upon which the elector depends. But there is nothing in the present case to indicate that the defendant was ignorant of any fact bearing upon its election.

Our conclusion is that, by its election to defend the Loughlin actions, the defendant incurred an obligation to plaintiff to act in his interest and behalf as well as its own, and this obligation was not fulfilled. Creem v. Fidelity & Casualty Co., 141 App. Div. 493, at pages 497, 498, 126 N. Y. Supp. 555; Humes Const. Co. v. Phila. Casualty Co., 32 R. I. 346, 79 Atl. 1. The amount awarded by the jury was reasonable.

Judgment affirmed, with costs.

MILLER and DOWLING, JJ., concur.

INGRAHAM, P. J. (dissenting). The defendant issued a policy of insurance, whereby it insured the plaintiff against "loss from common-law or statutory liability for damages on account of bodily injuries * * * accidentally suffered by any employé or employés of the assured * * * caused by the negligence of the assured" to an amount not exceeding $1,500. During the term of this policy one of the plaintiff's employés named Loughlin was injured. He was an infant, and he and his father commenced actions for damages against the plaintiff, claiming an amount largely in excess of the limit of insurance. The plaintiff gave notice of this accident to the defendant, which undertook the defense of the action. The action was subsequently tried by the defendant's counsel, the plaintiff being also represented by counsel on the trial, and there resulted two judgments against the plaintiff for upwards of $6,000. The defendant's liability being limited to $1,500, the result to the plaintiff was that, if these judgments were sustained, he would be compelled to pay more than $4,500, and the defendant would be compelled to pay $1,500. After the judgments were obtained, the defendant decided that it would not undertake the prosecution of an appeal, and therefore wrote to the plaintiff that it "has arrived at the conclusion that the prosecution of an appeal

would not be advantageous," and offering to substitute the plaintiff's attorney for the attorney who had represented the insurance company in defending the action. Such a substitution was had, the plaintiff prosecuted the appeal, and the Court of Appeals reversed the judgments appealed from and ordered a new trial. Subsequently the plaintiff's attorney succeeded in getting the actions dismissed for want of prosecution, which ended any liability of the plaintiff for the accident. The plaintiff then commenced this action and has recovered a judgment for the amount that he was compelled to pay to his attorney in obtaining a reversal of the judgments and a dismissal of the action.

It is quite clear that the plaintiff cannot sustain an action upon the policy. The policy contained the usual provision that no action would lie against the insurance company as respects any loss under the policy, unless it should be brought by the assured to reimburse him for loss actually sustained and paid by him after the trial of an action against him for an injury sustained by one of his employés. No judgment has ever been maintained against the plaintiff, and he has paid no judgment on account of the injury. Nor was the defendant obliged to defend the action brought against the plaintiff to recover for the injuries sustained by his employés. It had the option of doing so by the policy; but in the case of Cornell v. Travelers' Insurance Company, 175 N. Y. 239, 67 N. E. 578, it was expressly held that the clause in relation to the insurance company defending any action against the assured was intended to confer upon the company the right to control legal proceedings upon such claims at its election, and, if it determined that the claims were not such as to impose any liability upon the assured, it had the right to ignore the suit as to it and take its chances with respect to any liability that might ultimately be imposed upon the assured. The defendant had the right, therefore, to refuse to undertake the defense of the two actions brought against the plaintiff, and its liability in that case would have depended upon the recovery by the injured employé of a judgment against the plaintiff and the payment by the plaintiff of that judgment, in which case the defendant would have been liable to the plaintiff for $1,500. It undertook such defense, however, and conducted it until the entry of final judgment in the action. There was no obligation under this policy for the defendant to undertake an appeal from that judgment, and it had a perfect right then to say to the plaintiff, as it did say, "We decline to prosecute an appeal, and whenever you have to pay any judgment in favor of this injured employé, we will pay to you the $1,500 that we have agreed by the policy to pay on that condition."

Certainly up to this time the defendant had violated no agreement that it had made with the plaintiff and had not failed to perform any duty that it owed to the plaintiff. What the plaintiff did in prosecuting the appeal was, not to relieve the defendant of any liability, but was to relieve himself of the additional obligation imposed by the judgments upon him of upwards of $4,500. He prosecuted that appeal successfully, and finally escaped all liability. But no reason suggests itself to me why the defendant should pay the expenses incurred by him in relieving himself from this liability. The defendant had the

right at the beginning to decline to defend the actions, being liable for $1,500 if the plaintiff had to pay that amount in consequence of any judgment recovered against him. I think it clearly had the same right, after the judgments were rendered, to say that it would proceed no further with the defense of the actions or the prosecution of the appeals; but, whenever the plaintiff was compelled to pay any judgment in favor of the injured employé, it would respond to the amount of its liability as fixed by the policy. That time has never arrived, because the plaintiff has never been held liable to the injured employé and has been compelled to pay no judgment. There has been no adjudication that the claims of Loughlin and his father were within the terms of the policy, but by the terms of the policy the plaintiff has not been compelled to pay any sum of money for which the defendant is liable. The undertaking to defend imposed no greater liability upon the defendant than it would upon a lawyer who had been employed to defend, namely, to exercise ordinary care and prudence and provide competent professional skill for conducting the litigation. It might be that, if there was evidence of any neglect in the performance of this obligation, the defendant would have been liable for damages caused by such neglect.

It seems to me, therefore, that on this record no cause of action was either alleged or proved, and the judgment appealed from must be reversed, and a new trial ordered, with costs to the appellant to abide the event.

LAUGHLIN, J., concurs.