No. 45,511

W. Luke Chapin and Ruth Chapin, His Wife, *Appellants,* v. J. A. Aylward and R. A. Aylward, Partners, d/b/a Aylward Drilling Company, and Cities Service Gas Company, a Corporation, *Appellees,* and Marathon Oil Company, a Corporation; N. Appleman Company, a Sole Proprietorship Owned by Nathan Appleman; Harold Mellor; Barthel N. Lies and Rev. Michael J. Lies, *Intervening Defendants-Appellees.*

(464 P. 2d 177)

Opinion filed January 24, 1970.

*Gordon Penny,* of Medicine Lodge, argued the cause and was on the brief for appellants.

*Leo R. Wetta,* of Wichita, argued the cause and was on the brief for Barthel N. Lies and Rev. Michael J. Lies, intervening defendants-appellees.

*George B. Collins,* of Wichita, argued the cause, and *Robert M. Collins,* of Wichita, was with him on the brief for the other named appelees.

The opinion of the court was delivered by

PRICE, C. J.: This case grows out of a tax foreclosure action.

K. S. A. 79-2804b provides that all actions to open, vacate, modify or set aside any tax foreclosure judgment or any sale made thereunder, must be commenced within twelve months after the date of confirmation of the sale, and that such time limitation is to be construed as a condition precedent to the bringing of any such action and not as a statute of limitations.

Under applicable decisions of this court and of the supreme court of the United States the undisputed facts of this case establish that with respect to the service of notice of the tax foreclosure action certain property owner defendants in that action were denied due process of law. More than twelve months after confirmation of the sale in that action those defendants sought—in this action— to set aside the sale of their property as being void.

The question here, therefore, is whether the twelve-months time limitation provision of 79-2804b bars them from attacking that sale.

The trial court held such provision to be inapplicable and set aside the tax foreclosure sale in question.

The purchasers at that sale have appealed.

This case was submitted to the trial court on the pleadings and an agreed statement of facts.

The background of the matter is this:

For many years the Barber county land in question was owned by the Lies family. In 1957 Margaretha Lies owned an undivided one-half interest in both the surface and minerals, and the other undivided one-half interest was owned by her 14 children in equal shares. In that year Margaretha conveyed her undivided one-half

mineral interest to her 14 children. Barber county levied a tax on such mineral interest for the year 1957. The tax was not paid. In 1959, 12 of the Lies children conveyed all of their interest in the land—both surface and mineral—to the other 2 children—Barthel N. Lies and Michael J. Lies. Margaretha died in 1966, leaving her interest in the surface of the property to Barthel and Michael.

Proper newspaper publication notice of the above mentioned tax delinquency on the one-half mineral interest was given 1958, 1959, 1960, 1961 and 1962.

The Lies children resided at Andale, in Sedgwick county, and none had ever lived in Barber county.

On July 31, 1963, Barber county filed suit to foreclose its tax lien on the mineral interest in question—and on many other tracts and interests not here involved. An exhibit attached to the petition listed all 14 of the Lies children as owners of the mineral interest and Barthel and Michael as the surface owners of record. Summons was issued to the sheriff of Barber county for the 14 Lies children. It was returned as "not found in Barber county." No summons was ever issued to the sheriff of Sedgwick county and no personal service was attempted or obtained upon any of the Lies children, and they had no actual knowledge of the pendency of the tax foreclosure action.

Pursuant to the "not found" return of the sheriff as to the Lies children, publication service was had. Without detailing it—it may be said that the affidavit for service by publication—the publication itself—and all proceedings thereunder, including the finding and approval by the court—were in the usual, regular and proper form. In due course the action proceeded to judgment of foreclosure and sale. The mineral interest in question was purchased at the sheriff's sale by W. Luke Chapin and Ruth Chapin—who are plaintiffs in the present action. The sale to them was confirmed on December 5, 1963, and a sheriff's deed was issued the next day. A week later Mr. Chapin wrote to the Aylward Drilling Co., the operating lessee, advising it of the tax sale so that Aylward's records could be corrected accordingly. Aylward did not notify any of its co-lessees or any member of the Lies family about the tax sale after receiving the letter from Chapin.

Real estate taxes on the land in question were paid by members of the Lies family at all times up to and including the year 1963

when the tax foreclosure action was filed as to the one-half mineral interest which had been conveyed by Margaretha to her children in 1957. While that mineral deed did not list the addresses of the grantees therein, and the records in the county treasurer's office did not show their addresses on the mineral interest roll-book—nevertheless—

"These addresses could have been discovered by county officials had they referred to the personal property tax rolls and personal property tax receipts as to taxes on the gas produced, or had they referred to real estate tax rolls. Tax receipts for the years 1960, 1961 and 1963 showing the address of members of the Lies family as Andale, Kansas, are attached as Defendants' Exhibits F. G and H. (See Defendants' Exhibit E)."

In February 1967 the Chapins—the purchasers at the tax foreclosure sale in 1963, and who, in the meantime, had paid taxes on the mineral interest in question—brought this action against Aylward and Cities Service Gas Co. for damages for conversion of gas produced and sold. For our purposes the issues between those parties need not be noted. Hereafter the Chapins will be referred to as plaintiffs.

On June 1, 1967, Barthel and Michael Lies, whose mineral interest had been sold to plaintiffs at the tax foreclosure sale, filed, as intervening defendants, an answer, which, by way of an affirmative defense, alleged their lack of notice of the tax foreclosure action until more than twelve months after the execution of the sheriff's deed; that their addresses were at all times readily available to the county officials so that actual notice of the pendency of the tax foreclosure action could have been given to them personally; that the lack of personal notice to them was in violation of their rights under both the federal and state constitutions, and that the sheriff's deed to the purchasers (plaintiffs) was therefore null and void.

As stated, this case was submitted to the trial court on the pleadings and an agreed statement of facts—a portion of which is quoted, above.

In its judgment the court found and ruled that under the authority of *Pierce v. Board of County Commissioners,* 200 Kan. 74, 434 P. 2d 858, the sale of the mineral interest owned by the intervening defendants Lies was void because they had not been given personal notice of the pendency of the tax foreclosure action as required by the federal and state constitutions; that defendants Lies had not been guilty of laches and were not estopped from asserting their

rights and that Aylward (the operating lessee) was not their agent, and that the twelve-months time limitation provision of K. S. A. 79-2804b was not applicable to the case.

Accordingly, it was held that the sheriff's deed of December 6, 1963 issued to the plaintiffs in this action be set aside. Defendants Lies were directed to pay into court for the benefit of plaintiffs all mineral taxes assessed against the mineral interest in question for the years 1964, 1965, 1966 and 1967, with interest, plus their proportionate costs of the tax foreclosure case and their proportionate court costs of this action.

It was further ordered that plaintiffs were not entitled to damages, and that Aylward and other named defendants had a valid and subsisting oil and gas lease as their interests were set out in the stipulation of facts.

Plaintiffs appeal from that judgment.

We thus have this situation:

The undisputed facts are that the whereabouts and addresses of defendants Lies were at all times readily available so that they could have been personally served with summons in the 1963 tax foreclosure action. Instead—service by publication was had, but they had no actual knowledge of the pendency of that action.

The precise question, therefore, narrows down to this:

Did the lack of personal service amount to a denial of due process of law—and, if so—does the twelve-months time limitation provision of K. S. A. 79-2804b nevertheless bar them from attacking the tax foreclosure sale?

In addition to the provisions of 79-2804b mentioned earlier in this opinion, the section provides that the petition in every such action shall show that it was commenced within the twelve-months time limitation, and that if any action is not commenced within that period or if the petition does not show it was so commenced—the court shall have no jurisdiction of the action.

The sweeping provisions of the statute have been before this court in a number of cases. See *Shell Oil Co. v. Board of County Comm'rs,* 171 Kan. 159, 231 P. 2d 220 (opinion on rehearing, 171 Kan. 595, 237 P. 2d 257; appeal dismissed for the want of a substantial federal question, 342 U S 938, 96 L ed 698, 72 S Ct 562) and *Phillips Petroleum Co. v. Moore,* 179 Kan. 482, 297 P. 2d 183. Those decisions are authority for the proposition that the time limitation

provision of the statute is *absolute*—regardless of any claimed infirmity in a tax foreclosure action.

Adherence to the "absolute" rule would mean that here the intervening defendants Lies were out of time, for their rights were not asserted until June 1, 1967, when they filed their intervening answer—which was some three and one-half years subsequent to the date of confirmation of the tax foreclosure sale.

In *Walker v. City of Hutchinson,* 178 Kan. 263, 284 P. 2d 1073, the city condemned a part of Walker's property for street purposes. The appraisers who were appointed to determine compensation were required by statute to give at least 10 days notice of their proceedings either in writing or by one publication in the official city paper. They chose the latter method of giving notice. Walker later sought an injunction to prevent the alleged trespass on his property alleging that he had not been notified of the proceedings, knew nothing of them, and that the publication notice was insufficient to satisfy the Fourteenth Amendment's requirements of due process. The trial court denied relief. On appeal, this court affirmed —holding that the notice by publication did not deprive him of due process of law.

Upon appeal to the supreme court of the United States that court reversed (*Walker v. Hutchinson City,* 352 U S 112, 1 L ed 2d 178, 77 S Ct 200) and held that the newspaper publication alone was not adequate notice as required by due process, where, as the facts showed, the owner's (Walker's) name was known to the condemning city and was on the official records. In so holding the court followed the rule announced in *Mullane v. Central Hanover Tr. Co.,* 339 U S 306, 94 L ed 865, 70 S Ct 652, to the effect that, if feasible, notice must reasonably be calculated to inform parties of proceedings which may directly and adversely affect their legally protected interests.

It will be noted that our decision in the *Phillips* case, above, which gave sweeping approval to publication service in a tax foreclosure action where it was contended personal service could have been had—was handed down on May 5, 1956.

The *Walker* case, above, was decided by the supreme court of the United States on December 10, 1956.

In several respects the recent case of *Pierce v. Board of County Commissioners,* 200 Kan. 74, 434 P. 2d 858, relied on by the trial court, bears a striking similarity to the case now before us. Pierce

lived on his property in Leavenworth county. In a tax foreclosure action summons was issued for him, but was returned by the sheriff of Leavenworth county as not served for the reason that, after diligent search, he was unable to locate him (Pierce) in the county. Thereafter, publication service was had and the action proceeded to judgment and sale of Pierce's property. He later sued to set aside the sale, alleging that the tax foreclosure proceedings were void in that in the affidavit for publication service it was knowlingly and falsely alleged that personal service could not be had on him— when in truth and in fact he resided on the premises.

Following a trial, the court set aside the sale. The purchaser at the sale, Davis, appealed.

This court affirmed, and, in doing so, discussed in detail the requirements of due process as laid down by the supreme court of the United States in the *Mullane* and *Walker,* cases, above. While our decision recognized that K. S. A. 79-2801 *et seq.* provides a full, complete and comprehensive procedure for the foreclosure of tax liens and the sale of real estate thereunder, including the institution of actions or proceedings to open, vacate or set aside any judgment entered, or any sale made under the provisions of the act—to the exclusion of other statutes (K. S. A. 60-309) relating to the opening of default judgments rendered on publication service—it nevertheless was held that the failure to serve the landowner (Pierce) with personal notice in the tax foreclosure action resulted in his being deprived of his property without due process of law (syl. 8). There as here—the whereabouts and residence of Pierce could have been ascertained by the very simple expedient of examining the courthouse records.

It is quite true, as urged by plaintiffs here—that in the *Pierce* case the action to set aside the sheriff's sale was brought *within* twelve months from the date of confirmation of sale, and therefore this court was not called upon to decide the precise question presented here as to the application of the limitation period when the action to set aside is brought *after* that period.

In the *Pierce* case, syl. 2 and corresponding portions of the opinion of the *Phillips* case were disapproved. Syl. 5 and 6 of the *Pierce* case read:

"The requirements of due process contemplate that, where feasible, notice of legal proceedings be given by means reasonably calculated to inform all parties having legal rights which might be directly and adversely affected thereby.

"Where the names and addresses of adverse parties are known or easily ascertainable, notice of pending proceedings by publication service, alone, is not sufficient to satisfy the requirements of due process under the 14th Amendment to the federal Constitution or § 2 of the Bill of Rights of the Kansas Constitution."

Notwithstanding the purpose and legislative intent of K. S. A. 79-2804b to bring about finality and stability to tax titles unless attacked within the twelve-months period—we hold that the provision in question must give way to a situation where the facts clearly establish a denial of due process of law. We do not mean to imply—nor has the supreme court of the United States ever declared—that constructive service by publication will never satisfy constitutional requirements of due process. Indeed, there undoubtedly are many instances where the notice provided by publication service is the only method possible. But—just as in the *Pierce* case—such was not true in the case before us.

We hold, therefore, that as to the intervening defendants Lies—the proceedings in the tax foreclosure action resulted in their being deprived of their property without due process of law—and that the twelve-months time limitation provision of 79-2804b is inapplicable.

Other questions raised in the pleadings and briefs thus become moot and require no discussion.

The trial court was correct in ruling that the sale of the mineral interest owned by the intervening defendants Lies was void and that they were not barred from attacking it by the twelve-months time limitation provision of K. S. A. 79-2804b.

The judgment is affirmed.